IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAURICE EMILE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-974 |
| | ) | District Judge David S. Cercone |
| SUPERINTENDENT JOHNSON, | ) | Magistrate Judge Lisa Pupo Lenihan |
| and Sergeant Nas, | ) | |
| Defendants. | ) | Doc. No. 78 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.      RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 78) be granted.

### II.     REPORT

Maurice Emile (Plaintiff), is Pennsylvania state prisoner formerly housed in the State Correctional Institution at Pittsburgh (SCIP). Plaintiff filed a civil rights suit complaining that in July 2002, he was attacked by a fellow prisoner and was slashed with a knife on his face. He asserts that although there were metal detectors available at SCI-Pittsburgh, they were not used on the date he was attacked by inmate Haashiem Andrews. He implies that, had these metal detectors been used, he would not have suffered the attack. He complains that the failure to use the metal detectors evinced a deliberate indifference to his safety in violation of his Eighth Amendment rights.

**A. Standard of Review - Summary Judgment**

The remaining Defendants: Superintendent Philip L. Johnson and Correctional Officer Michael Nazarovich,[1] have filed motions for summary judgment pursuant to Fed. Rule Civ. Proc. 56 (doc. no. 78). Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, ". . . the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty

---

1. Incorrectly identified as Sergeant Nas in the Amended Complaint.

Lobby, Inc., 477 U.S. 242 (1986).  The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52).  If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted.  Anderson, 477 U.S. at 249-50.

**B. Material Facts**

Instantly, the parties dispute the legal significance of essentially undisputed facts.  Namely, they dispute whether the remaining two Defendants:  Superintendent Philip L. Johnson and Correctional Officer Michael Nazarovitch, were deliberately indifferent to a known risk of harm when they failed to ensure that the metal detectors were working properly at the State Correctional Institution at Pittsburgh (SCIP) on July 11, 2002.  The following are the relevant facts.

In July of 2002, Plaintiff was an inmate housed in the housing unit known as D-Block at SCIP.  On July 12, 2002, Plaintiff was in the "River Yard" during exercise period.  At that time, he was sitting on a bench and spat on the ground.  Inmate Haashiem Andrews, known only to Plaintiff as "Dog" told Plaintiff to clean up the spit.  Plaintiff refused and Haashiem pulled a razor out of his pocket and slashed Plaintiff in the face, neck and throat.

Correctional Officer Dobrzynski saw Plaintiff walking around the yard with blood on his face and asked him what happened. Plaintiff told him he had fallen from the push-up bar in the yard. Dobrzynski escorted Plaintiff to the prison hospital where it was determined that Plaintiff's wounds could not have been inflicted the way that he had described. Security was notified and Plaintiff was taken to mercy Providence Hospital where he received twenty-nine (29) stitches to close his wounds. Plaintiff subsequently admitted that "Dog" had attacked him. When inmate Andrews was interviewed soon after the incident, he admitted having assaulted Plaintiff in the exercise yard with a razor blade; however, no weapon was recovered. Andrews received a misconduct as a result of the attack. Shortly thereafter, the Pennsylvania State Police (PSP) commenced an investigation into the assault (doc. no. 79-6, pp. 3-6). On July 19, 2002, Plaintiff advised the PSP that did not wish to participate in any prosecution concerning his attack (doc. no. 79-6, p. 6).

On July 11, 2002, the day of the assault, Defendant Nazarovitch was the control sergeant on D-Block at SCIP with supervisory authority over seven correctional officers (doc. no. 79-6, p. 24). He did not have supervisory authority over the corrections officers assigned to C & D Yard and the metal detectors; those officers were under the authority and supervision of the Yard Sergeant (doc. no. 79-6, p. 25). Defendant Nazarovitch believes that the metal detectors were in use on the day of the assault because DOC policy stated that they were to be turned on prior to

inmates entering the yard (id.). Prior to the assault, Plaintiff had never expressed to Defendant Nazarovitch any antipathy for inmate Andrews; nor had he expressed any fear of inmate Andrews or that he had been threatened by inmate Andrews or any other inmates. Defendant Nazarovitch was never informed by any staff member or any other inmate that there was any conflict between Plaintiff and inmate Andrews (id.). Nor did Nazarovitch have any knowledge from any source which would have led him to believe that Andrews posed any sort of risk to Plaintiff (id.)

Neither Defendant had any knowledge of pervasive fighting with weapons in the SCIP yards; instead, they believed that they were isolated incidents, not more than one or two in a year (id.; doc. no. 79-6, p. 18). At the time of the assault, there were metal detectors throughout SCIP at various locations, including at the entrances to the yards; inmates were required randomly to pass though a metal detector upon entering and leaving the yards (doc. no. 79-7, p. 6).

### C. Liability under Section 1983

Plaintiff's complaint seeks recovery under 42 U.S.C. § 1983. In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements: 1) the alleged misconduct must have been committed by a person acting under color of state law; and 2) the defendants' conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535

(1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff's claim asserts liability against Defendant under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). This requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners. Farmer, 511 U.S. at 834 ("[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'") (quoting Rhodes v. Chapman, 452 U.S. 337, 345 (1981)).

Every Eighth Amendment claim embodies both an objective and a subjective component. In the context of a "failure to

protect" claim, a plaintiff must demonstrate that: 1) he is incarcerated under conditions posing a substantial risk of serious harm; and 2) prison officials showed "deliberate indifference" to such risk. *Id.*, 511 U.S. at 834. The first criterion requires a plaintiff to demonstrate that he suffered a deprivation that is "objectively sufficiently serious." *Id*. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, "deliberate indifference," requires that a plaintiff show that the defendant prison official had a sufficiently culpable state of mind. Farmer, 511 U.S. 828. The Supreme Court explained the deliberate indifference standard in Farmer as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and

> unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added). Actual knowledge can be proven circumstantially where the general danger was obvious. For example, an inmate may present evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past and the circumstances suggest that the defendant being sued had been exposed to information concerning the risk and thus must have known about it. Farmer, 511 U.S. at 842-43.

This standard was summed up by the Court of Appeals for the Third Circuit as follows.

> . . . To be liable on a deliberate indifference claim, a defendant prison official must both "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware. However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did

> not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring.

Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citations omitted).

In this case, Defendants do not appear to dispute that the record evidence shows that Plaintiff suffered a deprivation that was "objectively sufficiently serious." *See* King v. Department of Corr., No. 95 Civ. 3057, 1998 WL 67669 (S.D.N.Y. 1998) (inmate attacked by another inmate who received thirteen stitches for cuts to the face, neck, and shoulder fulfilled objective requirement of the Eighth Amendment); Knowles v. New York City Dep't of Corr., 904 F.Supp. 217, 221 (S.D.N.Y. 1995) (holding that inmate assaulted by a fellow inmate using a sharp object to cut the plaintiff's face and who subsequently received sixty stitches, met the objective requirement of the Eighth Amendment). Instead, the dispute turns on whether Defendants had the culpable intent necessary to sustain a claim of failure to protect. In order to prevail in demonstrating a culpable state of mind, a plaintiff must show both: (1) the defendant had actual knowledge of a substantial risk of harm; and (2) the defendant disregarded that risk by failing to take reasonable measures to abate the harm. Farmer, 511 U.S. at 837.

The Supreme Court repeatedly has emphasized that the deliberate indifference standard is a stringent standard of fault, requiring proof that a defendant disregarded a known or obvious

consequence of his action.  Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997) (emphasis added).  Thus, where officers have clear notice of the risk of harm, summary judgment is generally denied.

Defendants argue that Plaintiff has not stated a claim for an Eighth Amendment violation because, based on the facts leading up to Plaintiff's attack, the Defendants were unaware of any risk to Plaintiff's health or safety.  This Court agrees.  Plaintiff has submitted no evidence suggesting that either Defendant had knowledge of any risk, let alone a "substantial risk of serious harm" to Plaintiff's health or safety based on an attack by inmate Andrews.

A different situation was presented in Davidson v. Cannon, 474 U.S. 344 (1986), where the inmate had received a threat from another inmate and then communicated the threat to prison officials. The defendant officials deemed the threat non-serious and did not take any action; two days later the plaintiff was attacked and injured by the cited inmate.  The District Court determined that the inmate had failed to establish an Eighth Amendment claim because there had been no deliberate indifference and the incident related to a single attack.  *Id.*, 474 U.S. at 346.  However, the inmate prevailed under the Due Process Clause pursuant to his claim that prison officials negligently had failed to protect him from attack. *Id*.  Ultimately, the United States Supreme Court reversed this determination and held that, even though the officials' lack of due care had led to the plaintiff's injuries, such "negligence" could

not be the basis of a constitutional violation. *Id*. at 347-348. Prisons are violent places and correctional officers can not be held liable for failing to prevent every instance of harm that occurs.

Notwithstanding, Plaintiff need not show a particularized risk to him personally; it is sufficient under Farmer that prison conditions posed a generalized threat to the safety of all inmates. Thus, Plaintiff can prevail if he can show that there was a "pattern of attacks" that should have put the Defendants on notice that inmates were at risk of serious harm from metal weapons coming into the SCIP yard. One way to make out such a claim is to allege that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it. Specifically, in order to make out a claim under the theory of failure to protect against the general threat of harm, Plaintiff must show: that there were numerous other inmate-on-inmate attacks in the SCIP yard using metal weapons; these attacks posed a substantial risk of serious harm to inmates; the Defendants knew about these prior attacks; despite their knowledge of the prior attacks, Defendants failed to take steps to reduce the risk of harm to inmates; and if Defendants had ensured that the metal detectors were on that day, Plaintiff would not have been stabbed in the yard on July 11, 2002.

Again, Plaintiff has failed to submit any evidence to show that either Defendant was aware of a pervasive risk of inmate attacks from metal objects in the exercise yards at SCIP. While we can assume that Defendants were aware that inmate fighting in the yard was an ever present danger, Plaintiff does not submit any evidence to show a widespread danger of inmate fighting with metal objects. Moreover, because the shank never was recovered, Plaintiff has failed to show that a metal detector would have been effective in stopping the attack, *e.g.*, shanks made from plastic objects such a toothbrushes would not have triggered a metal detector.

While the harm actually suffered by Plaintiff gives this Court the benefit of hindsight, it does not reasonably support an inference that either of the Defendants disregarded a substantial risk to the Plaintiff's safety. Put simply, Defendants' actions do not show any conscious, culpable refusal to prevent a <u>known</u> risk of harm. *See* <u>Caldwell v. District of Columbia</u>, 901 F.Supp. 7, 9 (D.D.C. 1995) (correction officers' alleged negligence in following prison procedures in the opening and closing of cell doors did not rise to the level of deliberate indifference), *appeal dismissed*, 1996 WL 587652 (D.C. Cir. Sep. 16, 1996); <u>Doyle v. District of Columbia</u>, 1997 WL 590799, *3 (D.D.C. 1997) (plaintiff's general allegations that defendants showed deliberate indifference to prison safety failed to state any Eighth Amendment claim). Thus, Defendants motion for summary judgment should be granted.

**III. CONCLUSION**

It is respectfully recommended that Defendants' Motion for Summary Judgment (doc. no. 78) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. §636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

                                                /s/Lisa Pupo Lenihan
                                                Lisa Pupo Lenihan
                                                United States Magistrate Judge

Dated: July 29, 2008

cc: The Honorable David S. Cercone
    United States District Judge

    Maurice Emile, DH 1551
    P.O. Box A
    Cresson, PA 16699